IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : : | CIVIL ACTION |
| Plaintiff | : : | |
| v. | : : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 02-8601 (lead consolidated case) |

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : : | CIVIL ACTION |
| Plaintiff | : : | |
| v. | : : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 03-3192 (consolidated case) |

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, et al, | : : | CIVIL ACTION |
| Plaintiffs | : : | |
| v. | : : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 03-3651 (consolidated case) |

GENE E.K. PRATTER, J.                                                                              AUGUST 21, 2006

**MEMORANDUM AND ORDER**

Tropical Storm Alison left considerable heartache and disarray in its wake in June 2001, including this litigation. These consolidated cases concerned claims by four insurance companies that had provided various coverages to businesses that occupied buildings flooded by

the Sandy Run Creek in Whitemarsh Township during the storm. The insurers, as subrogees of their insureds, initiated suits against the developer, general contractor, civil engineer, excavator and lead clearing contractor that had been involved in the site development and construction of the flooded buildings.

With the agreement of all parties, the captioned cases were consolidated and then the consolidated case was bifurcated so that liability issues were tried to a jury and damages issues were reserved for an agreed upon procedure using a Special Master. At the close of the liability trial, the jury rendered a verdict against the defendants, finding them negligent and jointly and severally liable for the Plaintiffs' damages. The jury apportioned to Warren W. Baringer, Jr., i/t/a Baringer Land Clearers and t/a Baringer Land Clearing 1% of the liability for Plaintiffs' damages. By the time the damages phase of the case began, all defendants, except Baringer, had either been dismissed from the case or had settled with the Plaintiffs.

In accordance with the procedures agreed upon prior to the commencement of the liability trial, following the rendering of the jury verdict, the Court proposed to the parties three potential experienced attorneys for the parties' consideration as the possible selection to be the Special Master who would take evidence, hear argument on damages, render findings of fact and conclusions of law, and issue a recommendation concerning the damages sustained by the Plaintiffs. The parties all found Robert A. Prentice, Esquire acceptable to serve as Special Master, and, therefore, by Order dated October 17, 2005 and modified on October 21, 2005, the Court appointed Mr. Prentice to serve as the Special Master for the damages phase of this case.

After a period of time during which the parties presented the Special Master with documentary evidence, expert reports, position papers and briefs, the Special Master then

received testimonial evidence over the course of four days in February, 2006.  Thereafter, the parties were permitted to submit proposed findings of fact and conclusions of law.  The Special Master issued his Report and Recommendations dated April 11, 2006.  Pursuant to the agreed upon procedures, to the Court's October 21, 2005 Order and to Rule 53 of the Federal Rules of Civil Procedure, the Special Master's Report and Recommendations are subject to de novo review by the Court.  As provided by Order dated April 19, 2006, the Court permitted submission of objections to the Report and Recommendations and responses to such objections.  Only Baringer submitted Objections, detailing 18 specific Objections, to which Plaintiffs St. Paul Fire & Marine Insurance Company and Zurich-American Insurance Company responded.  The Court will review the Objections and the responses as part of the de novo review of the entire Report and Recommendation.

From a close examination of the Report and Recommendations, the Court is entirely satisfied that the Special Master undertook his obligations with conscientious attention to the parties' respective positions, to the factual details of the many specific individual items of damages at issue, to the nuances of the competing experts' opinions and to the conventional case law.  The Court also concludes that the Special Master performed his duties with considerable professional skill appropriate to the tasks at hand.  In their respective submissions to the Court, the parties observed that the Special Master "performed his duties admirably", devoted some 324 hours to discharging his obligations,[1] and "is an attorney with extensive experience in construction litigation."  In his 90-page Report and Recommendations, the Special Master

---

[1] The parties all received, reviewed and paid their respective shares of the Special Master's invoices in which the Special Master was required to detail the services performed, as well as the hours worked.

presented 306 Findings of Fact and 90 Conclusions of Law. The Special Master also thoroughly explained his methodology, included numerous record references, and cited, often with detailed analysis, controlling case law and other relevant legal authorities. Because many of the Findings and Conclusions turned upon the evidence presented by the parties' expert witnesses, the Special Master's Report clearly states his basis for accepting one expert's position over the other. Where issues presented particularly close questions, the Special Master candidly acknowledged the challenge and explained the basis for his ultimate decision on such points. It is clear that in many instances of specific items of damage the Special Master's decision was based upon his assessment of the credibility of the pertinent witnesses or, in some instances, the logical or rational compromise between the parties' competing positions as and to the extent reasonably permitted by governing law.

The Court has undertaken to evaluate the entire Report and Recommendations with particular attention to Baringer's Objections. The Court's assessment of the Objections follows.

<u>Baringer Objection No. 1</u>

St. Paul advanced a $250,000 claim for the cost to repair three NCO emergency diesel generators that were damaged in the flood, and, according to witnesses' testimony, were repaired. Although no repair invoice was presented, and Baringer attacked the testimonial support for the claim as "vague", the Special Master credited the uncontroverted testimony of St. Paul's adjuster that the cost of three new generators was approximately $528,000, and that repairs were made. He noted that Baringer's expert conceded that repair estimates were a "reasonable measure of proof." In the absence of equivocation on the fundamental issues of whether there had been generators present in the first instance, whether they had in fact been damaged, whether they

were actually repaired, and whether the insurer had accepted financial responsibility for the repairs, the Court concludes that the Special Master's award of $225,000 for this item should be accepted and adopted.

Baringer Objection No. 2

The second Objection centers upon, somewhat ironically, the computation of the number of NCO computers lost or damaged. The underlying evidence as presented allowed for an arguable discrepancy of 300 computers - - St. Paul's claim was premised upon a count of 527 computers while Baringer contended that only 227 computers had been verified by the salvage expert. The parties agreed that the $200 per unit value as reasonable. The Special Master accepted the lowest unit count, i.e., 300, from St. Paul's evidence that between 300 and 330 NCO employees labored at "workstations" on the first floor (which everyone agreed had been virtually destroyed by the flood), and reasoned that "workstations" included computer equipment. He also noted that the salvage expert's count of 227 computers had occurred earlier in the adjusting process. Even then, the salvage expert and others used terminology that was not entirely identical. For example, the salvage expert had also referenced some 314 "desktops", which could easily account for the unit-count discrepancy. The Special Master's conclusion is reasonable and will be adopted by the Court. Thus, this item of the award will be confirmed at $105,400, less the agreed upon $3,550 salvage value, for a net item award of $101,850.

Baringer Objection No. 3

Baringer objects to the award of $98,965.50 representing St. Paul's payment (treated as part of a much larger "extra expense" claim) to NCO for rental payments NCO lost from a subtenant as a result of the flood. The Special Master correctly concluded that simply because an

amount reflects a good faith compromise of a dispute this fact does not render the compromised amount unrecoverable in this context. To preclude recoveries for good faith, arm's length settlements would only foment litigation and frustrate the well-recognized public policy in favor of settlements. The Court will uphold this item of the award as recommended by the Special Master.

Baringer Objection No. 4

Baringer has incorrectly assessed the Special Master's recommended award for the restoration of NCO's valuable papers. Baringer characterized the award as one in the amount of $696,485.64, but Baringer erroneously double-counted $325,000 of the components considered by the Special Master in calculating this award item. The recommended amount awarded was $371,485.64, as explained in appropriate detail by St. Paul in its response to Baringer's Objections. To evaluate this item of St. Paul's claim, the Special Master credited the St. Paul witness's testimony and supporting exhibits, as well as a document reflecting charges for restoration work performed. The Court concludes that Baringer's Objection is without merit and that the Special Master's $371,485.64 recommendation should be adopted.

Baringer Objection No. 5

Amid the aggregate of $1,857,432.17 awarded for extra expense, the Special Master included an award of $43,922.45 emanating from NCO's payments of bonuses and overtime to its employees for their work in dealing with the after-effects of the flood. While as to other components of the aggregate extra expense award the Special Master was able to point to sufficient specific support, in this regard the Court concludes that Baringer is correct that there is insufficient evidentiary support in either the Report and Recommendation or in St. Paul's

Response to sustain this award or this amount.  Therefore, the Court shall *not* confirm this $43,922.45 amount recommended by the Special Master, and this amount will be deducted from the award to St. Paul.

Baringer Objection No. 6

The Court finds that Baringer's Objection No. 6 fails to present any specific basis for the objection and, in addition, the Court concludes that the Special Master has sufficiently set forth the basis of his recommendation for the $90,959.57 "miscellaneous" expenses objected to by Baringer.

Baringer Objection No. 7

This Objection concerned the $175,000 awarded to Zurich for damage to Teleflex's clean room.  The upshot of the Objection appears to be that the item in question was based upon an undocumented estimate.  As Zurich points out, under Pennsylvania law, damages may be estimated, including an expert's estimates for repairs that have been made.  In this instance, there is no dispute that there was a clean room, that it was damaged, that a qualified expert gave his reasonable opinion that a repair would cost $175,000 and that such a repair would not constitute a betterment to the facility.  Under the circumstances, the Court will adopt the Special Master's recommended award of $175,000.

Baringer Objection No. 8

Baringer objects to $190,422 of the $2,262.261 recommended to be awarded to Zurich for repair or restoration of Teleflex's business personal property.  The grounds of this Objection all seem to be simply that Baringer's expert did not agree to the extent of the amount of the Objection.  In light of the importance in having had a first-hand opportunity to evaluate the

7

approach, explanations and convincing characterizations of the parties' experts, the Court believes it to be entirely appropriate to adopt the Special Master's implicit declination to follow Baringer's expert's apparent cynicism about Zurich's proofs. The Court accepts the Special Master's full $2,262,261 recommended award for this item.

Baringer Objection No. 9

Baringer's Objection No. 9 seeks a $194,727 reduction of the recommended award of $606,186 for Zurich's payments to Teleflex for destroyed equipment. While the Special Master disallowed some $86,509 of Zurich's claim for this item, Baringer contends that the Special Master improperly used a replacement cost method of valuation and an incorrect depreciation rate. With respect to the former ground for the Objection, the Court notes that at ¶ 68 of the Special Master's Conclusions of Law, the Special Master states clearly that he was using a compromised fair market value, as well as a compromised depreciation figure of 35%, that being half way between Baringer's proposed 45% rate and Zurich's 25%, with both of which proposed rates the Special Master noted flaws. Under the analytical circumstances and as permitted by the applicable Pennsylvania case law, as well as the extensive record citations on this point, the Court finds no compelling basis on which to reject the Special Master's recommended award.

Baringer Objection No. 10

This Objection - - concerning the recommended award of $134,798 for Teleflex's destroyed small tools - - is substantively the same as Objection No. 9 and, for the same reasons, the Court will adopt the Special Master's recommendation.

Baringer Objection No. 11

This Objection centers upon Baringer's argument that the Zurich claim for $4,908,463 for

loss or damage to Teleflex's stock and inventory improperly included payment for "obsolete" material. The Special Master's conclusions with respect to this claim are very specifically spelled out at ¶¶ 175-197 of his Report and reflects the Special Master's evaluation of not only the parties' experts' opinions, but also Teleflex's business practices and the tacit acceptance by Baringer or Baringer's expert of many of the Zurich assumptions and valuations that are now challenged. Accordingly, the Court concludes that this recommended award is reasonable and consistent with the legal principles governing damage recovery in cases of this type.

Baringer Objection No. 12

Baringer objects to $82,510 of the $391,689 recommended award for Zurich's payment for damage to Teleflex's valuable papers because that portion of this item was not documented with an actual invoice. The disputed amount was, however, within the estimate supplied by a qualified restorer of such material and, in light of the fact that there was no dispute that the papers were damaged, that only important Teleflex papers were restored and that the estimate was reasonable, the absence of an invoice is not fatal to the recovery under governing case law. See, e.g., Lynch v. Bridge & Company, Inc., 451 Pa. Super. 92, 96, 678 A.2d 414, 416 (1996); Pikunse v. Kopchinski, 429 Pa. Super. 46, 51-52, 631 A.2d 1049, 1051 (1993). Thus, the Special Master's recommended award for this item of recovery will be adopted.

Baringer Objection No. 13

Baringer's objection to certain of Zurich's payments to Teleflex, for extra business expenses incurred to relocate its operations after the flooding in order to continue its business and mitigate its losses, is based upon the argument that not all of the covered expenses were documented and some were incurred "outside the period of restoration." Baringer conceded that

the disputed expenses were both necessary and reasonable. The Special Master found that, as to the challenged $374,903 incurred to validate machinery required as part of Teleflex's need for F.D.A. approvals, that was incurred as a direct result of Teleflex's move of its operations necessitated by the flood. In other words, the key fact as to this item was the undisputed proximate cause of the expenditure, not the happenstance of the actual timing of it. (Although the Special Master noted - - as does the Court - - that Baringer acknowledged the appropriateness of other expenses incurred as long as three months after the "period of restoration.") With respect to certain allegedly insufficiently invoiced expense items, there was credible testimonial explanation and substantiation for them, and the Court will adopt the Special Master's recommended award.

Baringer Objection No. 14

This Objection concerns the issue of the calculation of saved expenses to be deducted from the lost earnings. The upshot of Baringer's Objection seems to be only that the Special Master did not accept the Baringer expert's calculations and criticism of the Zurich claim. Zurich's response to the Objection sets forth in painstaking detail the evidentiary support for this recommended award, and the Special Master explained his conclusions with clarity - - including his reasons for accepting certain of Baringer's arguments to reject more than $200,000 of Zurich's claim for this item. The Court will accept the Special Master's final resolution of this "duel of experts."

Baringer Objection No. 15

This Objection concerns $843,344 of Zurich's $1,118,680 payment to Teleflex for increased production costs, most of which ($787,890) arose from the calculated estimate for

manufacturing aortic punches. To be precise, the Objection is primarily an argument that Zurich's expert failed to deduct fully various savings that resulted from Teleflex having to outsource the manufacture of the aortic punches and certain other material. There is also an element in this Objection relating to payroll savings. The Special Master explained to the satisfaction of the Court his analysis of Zurich's expert's calculations and reasons for accepting them - - especially in comparison to Baringer's (see, e.g., Finding of Facts at ¶ 253) - - and the Court will accept the recommended award.

Baringer Objection No. 16

Baringer objects to $69,882 of the proposed $149,278 award to Zurich for the Teleflex Rusch-Pilling loss. The Court, not unlike the Special Master, notes with some concern the unexplained and anomalous spike in the sales data on which Zurich's expert based the amount of this claim. Because the basis in logic, and the inherent fairness, of eliminating such a spike in the underlying data is more consistent with the Special Master's overall approach to this entire dispute where anomalies appear or equity demands the exercise of such discretion, the Court will sustain this Objection and reduce the proposed award to Zurich by $69,882 for this item of loss.

Baringer Objection No. 17

Objection No. 17 attacks the entirety of the proposed $116,399 award to Federal Insurance Company for payment arising from its insured's loss of rental income for property at 525 Virginia Drive. The upshot of the Objection is that Federal's payment of the disputed amount was essentially voluntary. In fact, the payment was quite clearly the compromise between Federal and its insured of a disputed claim concerning a covered item. Contrary to Baringer's arguments, a compromise reached other than in the face of actual litigation or pre-

litigation saber-rattling does not necessarily become "voluntary" and unrecoverable. Where a third party becomes at risk for reimbursing one party to an arm's length settlement, the key issue becomes whether the settlement was reasonable. Here, there is no suggestion of unreasonableness, and, as with Objection No. 3, supra, the Court will uphold the proposed award.

Baringer Objection No. 18

In contrast to the immediately preceding Objection, the Court finds Objection No. 18 to be meritorious in that the circumstances leading to Great Northern's forgiveness of $150,000 of its $500,000 deductible should not be laid at Baringer's door. If a "drafting error" led to Great Northern's decision not to impose upon its insured the full amount of the deductible, the Court is of the view that Great Northern may look to others to make it whole in this regard. Therefore, the proposed award to Great Northern will be reduced by $150,000.

Conclusion

Having found the Special Master's Report and Recommendation eminently clear and, except as noted specifically above as to Objections Nos. 5, 16 and 18, entirely compelling[2] for the reasons stated therein, as supplemented by the further explanations by St. Paul and Zurich, an Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*

---

[2] Because the parties' respective positions were equally clear and well-presented as written, the Court did not consider oral argument to be needed and, therefore, declined Baringer's request for oral argument.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 02-8601 (lead consolidated case) |

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 03-3192 (consolidated case) |

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, et al, | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| THE NOLEN GROUP, INC., et al, | : | |
| Defendants | : | NO. 03-3651 (consolidated case) |

**O R D E R**

AND NOW, this 21st day of August, 2006, upon consideration of the Report and Recommendations of Special Master Robert A. Prentice, Esquire, and the Findings of Fact and Conclusions of Law made by him following briefing and the presentation of documentary and testimonial evidence by the parties, and any responses or objections by the parties thereto, it is

HEREBY ORDERED that:

1. The Report and Recommendation, including the Findings of Fact and Conclusions of Law therein, is hereby ADOPTED except as set forth in the accompanying Memorandum of the same date by which the award for St. Paul Fire and Marine Insurance Company is reduced by $43,922.45, the award for Zurich-American Insurance Company is reduced by $69,882.00 and the award for Great Northern Insurance Company is reduced by $150,000;

2. Damages are hereby assessed against Defendants, and Defendants are hereby ORDERED to pay to Plaintiffs, in accordance with the liability determined by the jury in July, 2005, as follows:

    A. to Plaintiff The St. Paul Fire & Marine Insurance Company $5,548,969.55;

    B. to Plaintiff Zurich-American Insurance Company, $20,915,654.00;

    C. to Plaintiff Federal Insurance Company, $1,676,335; and

    D. to Plaintiff Great Northern Insurance Company, $124,209.

BY THE COURT:

S/Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*